UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADVANTUS, CORP.,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>SANDPIPER OF CALIFORNIA, INC.; n/k/a DBJ Enterprises, Inc.; PIPERGEAR USA, INC.; INNOVAPRO CORPORATION; and DAVID JACOBS,<br><br>　　　　　　　　Defendants. | Case No.:  19cv1892-CAB (NLS)<br><br>**ORDER ON MOTION FOR DETERMINATION OF DISCOVERY DISPUTE NO. 2**<br><br>**[ECF No. 165]** |

　　　　Before the Court is Plaintiff Advantus, Corp.'s ("Advantus") Motion for Determination of Discovery Dispute No. 2.  ECF No. 165.  Because the motion was not filed as a joint motion per the Chamber Rules, the Court ordered Defendants Sandpiper of California, Inc. ("Sandpiper"), Pipergear USA, Inc. ("Pipergear"), and David Jacobs ("Jacobs") (collectively, the "Jacobs Defendants") to oppose and Plaintiff to file a reply.  ECF No. 166.  On September 25, 2020, the Jacobs Defendants filed an opposition (ECF No. 170), and Plaintiff filed a reply on October 2, 2020.  After due consideration and for the reasons set forth below, the Court **GRANTS** Plaintiff's motion to compel discovery from the Jacobs Defendants.

//

## I. BACKGROUND

Plaintiff is a company that manufactures and distributes military style bags, backpacks, and other luggage items. ECF No. 121 at ¶ 2. It filed this lawsuit against the Jacobs Defendants and Innovapro Corporation ("Innovapro"), alleging that they engaged in false advertising of competing products and labeled their goods as being made in the USA without any basis to do so. *Id.* at ¶¶ 19-23.

The discovery at issue in this motion consists of the following: (1) Plaintiff's Second Set of Requests for Production to Pipergear (ECF No. 165-3 at 2-82); (2) Plaintiff's Second Set of Interrogatories to Pipergear (ECF No. 165-3 at 82-100); (3) Plaintiff's First Set of Requests for Production to David Jacobs (ECF No. 165-3 at 101-133); (4) Plaintiff's Interrogatories to David Jacobs (ECF No. 165-3 at 133-136); (5) Plaintiff's Second Set of Interrogatories to Sandpiper (ECF No. 165-3 at 136-155). The Jacobs Defendants served responses to the discovery on July 23, 2020. ECF No. 165-2 at 1. After failed attempts to meet and confer on the responses to this discovery, Plaintiff filed the instant motion.

## II. DISCUSSION

### A. Jacobs Defendants' Opposition

As a threshold matter, the Court will first address the Jacobs Defendants' opposition to this motion. The opposition primarily agrees that the Court should grant the motion, but argued that the Court should deny the request for immediate responses. ECF No. 170 at 2. Specifically, the Jacobs Defendants argue that the Court should not rule on the objections at this time, that they be permitted 60 days to supplement responses and produce documents, the parties to further meet and confer after the supplement, and then submit to the Court a modified statement of any unresolved issues. *Id.* at 4. Plaintiff opposes this proposal, arguing that it would essentially give Defendants a do-over on what they should have done in the first place, reward them for not engaging in the meet and confer process, and may disrupt the case schedule. ECF No. 174.

Plaintiff details the attempts to meet and confer prior to filing this motion. The

parties initially scheduled a conference for August 13 to discuss the discovery responses and objections. ECF No. 165-2 at 2. On August 12, the Jacobs Defendants' counsel, Mr. Ramey, communicated that he needed to reschedule the conference and it was reset for August 17. *Id.* Plaintiff's counsel called Mr. Ramey at the scheduled time on August 17, but could not reach him and left a voicemail. *Id.* at 2-3. Having not heard back by August 21, Plaintiff's counsel sent a letter outlining the issues with the responses and requesting a response by August 28. *Id.* at 3. Still not having heard back, Plaintiff's counsel left voicemails for Mr. Ramey on September 2, 3, and 4, and followed each of the calls with emails—which all went unanswered. *Id.* Finally, on September 8, 2020, Plaintiff's counsel emailed Mr. Ramey with a draft of this discovery dispute, stating that day was the deadline to file it under the Court's Chamber Rules. *Id.* An assistant called from Mr. Ramey's office stating that he would not be available until the following day. *Id.* Because of the pending deadline, Plaintiff filed this motion later on September 8.

Counsel for the Jacobs Defendants does not dispute Plaintiff's accounting of the meet and confer efforts. Rather, Mr. Ramey argues that the lack of communication was due to one of his staff being exposed to Covid-19 and his demands on other cases. *See* ECF No. 170-1 at ¶¶ 45-50. This does not excuse the lack of communication over several weeks, between August 12 through September 8, which Mr. Ramey does not dispute. Further, while the Court appreciates Mr. Ramey's detailing of his diligence in reviewing and getting documents ready for production after September 8 (*see* ECF No. 170-1 at ¶¶ 37-44), the Court does not find that this excuses the lack of participation in the meet and confer process. As detailed further below, the Court will not order immediate compliance, giving the Jacobs Defendants additional time to produce documents, but the Court will rule on the issues presented in Plaintiff's motion to minimize further delay in the case.

B. Individual Discovery Issues

a. Interrogatories

As to the interrogatories for all Jacobs Defendants, Plaintiff states that their

responses have not been verified as required under Federal Rule of Civil Procedure 33(b)(1). ECF No. 165-2 at 5. The Court **GRANTS** the motion to compel as to this issue, and **ORDERS** each Jacobs Defendant to provide verified responses to Plaintiff's interrogatories **within 21 days** of this order.

### b. Sandpiper's Responses

Plaintiff argues that Defendant Sandpiper never provided actual responses to its request for production. ECF No. 165-2 at 4. Rather, what Plaintiff received was a duplicate of Pipergear's responses, with objections that apply to Pipergear and not Sandpiper. *Id.* Plaintiff argues that the time for response has now long passed, and any objections are waived. *Id.* The Court agrees and accordingly, **GRANTS** the motion to compel as to this issue. Sandpiper is ordered to respond to and produce documents responsive to Plaintiff's requests for production **within 21 days** of this order. Any objections are deemed waived.

### c. Specific Objections

As to the other Jacobs Defendants who gave objections in response, Plaintiff argues that several are unwarranted and should be overruled by the Court. The Court will address each of them in turn.

**False Advertising Overbreadth Objection**

Plaintiff argues that the Court should reject Defendants' objection suggesting that Plaintiff's false advertising claims are only "alleged to be a single false representation to a military exchange buyer." ECF No. 165-2 at 6. Plaintiff argues that, in fact, its allegations about false advertising are much broader. *Id.*

After review of the operative complaint in this case, the Court agrees. Plaintiff alleges that Defendants have been falsely advertising that their products were made in the USA since 2013, including at least the following: a statement on the FAQ section of their product website, in their product catalog listings, their flag symbol legend, the "About" section of their Facebook page, in oral communications to buyers at events at the Armed Forces Exchanges, and on their business cards. ECF No. 121 at ¶¶ 21-23.

Given these allegations, this objection is **OVERRULED**. Defendants may not limit their production of documents using this objection and temporally are limited to January 2013 as specified in Plaintiff's requests' general instructions.

**Other Overbreadth Objections**

Plaintiff argues that Defendants otherwise attempt to limit their responses to its requests for production by stating that the requests are too broad and not proportional to the case. Plaintiff does not explicitly identify what exact Requests for Production are affected by which issue, so the Court will address the issues presented below and hold the parties to apply its rulings in good faith as to all requests for production that are affected.

### Alter Ego

Plaintiff argues that Defendants attempt to limit their responses by stating that the alter ego theory of liability only contains two elements and should be limited to the time period around Sandpiper's alleged misrepresentations to buyers at the Army and Air Force Exchange. ECF No. 165-2 at 7.

First, at to the temporal issue, the objection is **OVERRULED**. As discussed above, the false misrepresentation allegations are broader than just the one Armed Forces Exchange event and should reach back to January 2013. *See* ECF No. 121 at ¶¶ 21-23.

Second, as to what information may go to establish alter ego liability, Defendants are correct that it is a two factor test: (1) where there is "such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist" and (2) whether "if the acts are treated as those of the corporation alone, an inequitable result will follow." *Pac. Mar. Freight, Inc. v. Foster*, No. 10-CV-0578-BTM-BLM, 2010 WL 3339432, at *6 (S.D. Cal. Aug. 24, 2010). However, many factors go into this calculation, including for example "commingling of funds, failure to maintain minutes or adequate corporate records, identification of the equitable owners with the domination and control of the two entities, the use of the same office or business locations, the identical equitable ownership of the two entities, the use of a corporation as a mere shell, instrumentality or conduit for a single venture or the business of an

1   individual, and the failure to adequately capitalize a corporation." *Id.*

2   Under this legal framework, the Court agrees with Plaintiff that information
3   regarding commingling of assets and funds, holding out one entity as liable for the debts
4   of another, and disregard for corporate formalities would be relevant information and
5   proportional to the needs of the case. Indeed, many of these factors have been alleged in
6   the complaint. Plaintiff alleges that Defendant Jacobs founded both Sandpiper and
7   Pipergear and exerted control over both companies, shifted money between them,
8   directed employees of one to perform services for the other, made "loans" between one
9   and the other without formal accounting, and that Pipergear and Sandpiper shared offices
10  and did not engage in business with each other at arms-length. ECF No. 121 at ¶¶ 11-18.

11  Thus, this objection is **OVERRULED**. Defendants may not withhold any
12  documents under this objection with regard to requests seeking information regarding the
13  relationship between Mr. Jacobs, Sandpiper, and Pipergear.

14  <u>Voidable Transfer</u>

15  Plaintiff argues that information sought in its requests are also relevant to its
16  voidable transfer claim. For this claim, Plaintiff alleges that in August 2018, Sandpiper
17  transferred assets to Defendant Innovapro, without the proper process, and Innovapro did
18  not in turn provide reasonably equivalent value for the assets. ECF No. 121 at ¶¶ 93-103.
19  During this time, Sandpiper forgave loans owed by Mr. Jacobs and Pipergear. *Id.* Thus,
20  Plaintiff argues that evidence sought in its requests concerning what the actual
21  relationship was between Sandpiper and Innovapro would be relevant to this claim as
22  well.

23  The Court also agrees with Plaintiff on this issue. Defendants must produce
24  documents responsive to Plaintiff's requests for production regarding the relationship
25  between Sandpiper and Innovapro. Defendants must also produce documents regarding
26  the loans around August 2018 discussed in Plaintiff's brief (ECF No. 165-2 at 8) and the
27  2018 Asset Purchase Agreement with Innovapro and documents related to this
28  transaction, including any loans forgiven (ECF No. 165-2 at 9).

<u>Conspiracy</u>

Plaintiff's allegations also include that Innovapro, Sandpiper, and Pipergear all conspired together to falsely advertise their products as being made in the USA. ECF No. 121 at ¶¶ 87-92. Thus, Plaintiff argues that information sought from Pipergear concerning its operations and communications with Sandpiper during the time period affecting the false advertising claim is relevant and should be produced, as relevant to conspiracy as well as alter ego, direct liability, and voidable transfer.

The Court again agrees with Plaintiff on this issue. Defendants must produce documents responsive to Plaintiff's requests for production regarding Pipergear's operations and with relationship with Sandpiper that are relevant to the conspiracy claim.

**Financial Information**

Plaintiff seeks information regarding Sandpiper and Pipergear's revenue and costs related to any of their products claimed to be made in the United States as relevant to disgorgement of profits, which Plaintiff seeks as part of its damages. ECF No. 165-2 at 9-10. Plaintiff also seeks documents bearing upon Defendants' actions and motives relating to false marketing and advertising of the products as relevant to establishing whether the violation was willful. *Id.*

Plaintiff asserts a claim for false advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B). ECF No. 121 at ¶¶ 53-65. As part of its damages, Plaintiff requests that Defendants account for and pay all profits realized from sale of the allegedly falsely advertised products. *Id.* at 15. As Plaintiff points out, the Supreme Court recently ruled in *Romag Fasteners, Inc. v. Fossil, Inc.* that willfulness is not required in order for Plaintiff to be awarded a disgorgement of profits award in a Lanham Act case, but willfulness is still a "highly important consideration." 140 S. Ct. 1492, 1497 (2020).

Thus, Plaintiff's motion to compel is **GRANTED** in this regard. Any financial documents that would establish Defendants' profits for the relevant products, including revenue and costs, as well as documents that would go toward whether the alleged false advertising was willful are relevant and should be produced.

**Mark Riley Documents**

Plaintiff also claims that Defendants have not produced documents responsive to their requests for production that are in the custody of their former accountant, Mark Riley. ECF No. 165-2 at 12-13. Defendants themselves served a subpoena on Mr. Riley to get these documents. Defendants' counsel states that he now is in possession of at least some documents from Mr. Riley and has reviewed them. ECF No. 1701-1 at 28-31. He has uncovered a potential issue with attorney client privilege (which will be addressed below, and also believes some pertinent documents may be missing (for example, documents related to purchases, sales, and agreements). *Id.*

To the extent the Defendants are now in possession of non-privileged documents from Mr. Riley that are responsive to Plaintiff's requests for production, Defendants must produce those to Plaintiff on a rolling basis. To the extent that Defendants' counsel continues to identify missing documents, the Court assumes that Defendants' counsel has been diligent in obtaining them from Mr. Riley in the month between when counsel filed his declaration until the present day. These documents must be produced to Plaintiff pursuant to the timeline set in this Order. Accordingly, Plaintiff's motion to compel as to these documents is **GRANTED**.

**Attorney Client Privilege**

Plaintiff raises two issues concerning attorney client privilege. First, Plaintiff states that it seeks documents sufficient to show certain information, for example, Pipergear's indebtedness to Sandpiper at from year-end 2013, 2014, through the date of loan forgiveness as related to the fraudulent transfer claim. ECF No. 165-2 at 10-11. Defendants have objected to some of these requests on attorney client privilege grounds. *Id.* Plaintiff argues that financial documents like these should be produced and are unlikely to be privileged because attorney review of a document does not make the document privileged. *Id.* Second, with regard to Mr. Riley's documents, in Defendants' opposition, their counsel states that some of the documents are privileged because they contain communications between Mr. Riley and an attorney, Dan Navigato, regarding the

FTC's complaint against Defendants. ECF No. 170-1 at ¶ 25, 29-30.

Currently, it does not appear that any privilege log has been produced. Before the Court can evaluate any privilege issues, Defendants must produce a privilege log to Plaintiff if they are going to withhold any documents from themselves or Mr. Riley on privilege grounds. Thus, the Court **ORDERS** Defendants to produce a privilege log, along with the document production. In evaluating whether documents are privileged and preparing the privilege log, the Court expects Defendants to be cognizant of and faithfully apply the the law surrounding attorney client privilege.[1]

### III.  CONCLUSION

After due consideration and for the reasons stated above, Plaintiff's motion to compel production from Defendants is **GRANTED**. The Court **ORDERS** the Jacobs Defendants to:

(1) Provide to provide verified responses to Plaintiff's interrogatories **within 21 days** of this order;

(2) Sandpiper is ordered to respond to and produce documents responsive to Plaintiff's requests for production **within 21 days** of this order;

(3) Defendants Jacobs and Pipergear must produce documents responsive to Plaintiff's request for production in accordance with this order, particularly as to the objections above that have been overruled, **within 21 days** of this order;

---

[1] "The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011). The advice sought must be of a legal nature. *Dunfee v. Truman Capital Advisors, LP*, No. 12-CV-1925-BEN DHB, 2013 WL 6118361, at *5 (S.D. Cal. Nov. 20, 2013). The work product privilege protects documents only if they were prepared in anticipation of litigation. *F.T.C. v. Grolier*, Inc., 462 U.S. 19, 25 (1983). Simple lawyer review of a document, without more, does not make the document privileged. *Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 647 (D. Nev. 2013).

(4) Defendants must produce to Plaintiff a privilege log for any documents that are being withheld for any privilege **within 21 days** of this order. This log must be sufficiently detailed such that Plaintiff, and the Court if necessary, can make a determination of whether the privilege has been properly asserted.

**IT IS SO ORDERED.**

Dated: October 26, 2020

Hon. Nita L. Stormes
United States Magistrate Judge