UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADVANTUS, CORP., <br><br> Plaintiff, <br><br> v. <br><br> SANDPIPER OF CALIFORNIA, INC.; n/k/a DBJ Enterprises, Inc.; PIPERGEAR USA, INC.; INNOVAPRO CORPORATION; and DAVID JACOBS, <br><br> Defendants. | Case No.: 19cv1892-CAB (NLS) <br><br> **ORDER ON MOTION FOR DETERMINATION OF DISCOVERY DISPUTE NO. 3** <br><br> [ECF No. 186] |

Before the Court is the parties' Joint Motion for Determination of Discovery Dispute No. 3, wherein Plaintiff/Counterdefendant Advantus Corp. ("Advantus") seeks to compel Defendant/Counterclaimant Innovaparo Corporation ("Innovapro") to produce full, unredacted versions of two settlement agreements. ECF No. 186. After due consideration and for the reasons set forth below, the Court **GRANTS** the motion to compel.

**I.   BACKGROUND**

Advantus is a company that manufactures and distributes military style bags, backpacks, and other luggage items. ECF No. 121 at ¶ 2. It filed this lawsuit against Defendants, alleging that they engaged in false advertising of competing products and

labeled their goods as being made in the USA without any basis to do so. *Id.* at ¶¶ 19-23. Innovapro is alleged to be the manufacturer of Defendants' competing bags and is also alleged to be have provided capital to the other Defendants and took over the Sandpiper brand. *Id.* at 31-50.

Innovapro asserted counterclaims against Advantus for trademark infringement. ECF No. 150. Innovapro alleges that it owns three trademarks: BUGOUT, BUGOUT GEAR, and BUGOUT GEAR BE READY. *Id.* at ¶¶ 2, 17-30. Innovapro claims that it and its predecessors have continuously used these marks since at least 2000 on its travel bags. *Id.* at ¶ 31. Innovapro accuses Advantus of infringing its trademark rights by selling a product called the Blaze Bugout Bag. *Id.* at ¶ 37.

Advantus answered this counterclaim and asserted its own counterclaims. ECF No. 177. Specifically, Advantus alleges that the trademarks are generic, were abandoned, and are invalid due to fraud on the PTO. *Id.* at ¶¶ 25-35, 47-58, 59-79.

The exact details of how Innovapro obtained rights to these trademarks are relevant to the present motion. The BUGOUT GEAR mark was originally assigned to Stephen C. Smith ("Mr. Smith"), who was the principal of a company called Bugout Gear LLC. *Id.* at ¶ 18, Ex. A. The BUGOUT GEAR BE READY mark was originally assigned to Bugout Gear LLC. *Id.* at ¶ 23, Ex. B. The BUGOUT mark was originally assigned to Sandpiper. *Id.* at ¶ 28, Ex. C. Sandpiper assigned all three of these marks to Innovapro in 2018. *Id.* at ¶¶ 19, 24, 29.

In the interim, Sandpiper obtained the BUGOUT GEAR and BUGOUT GEAR BE READY marks from Mr. Smith and his company Bugout Gear LLC. It appears that Sandpiper had an agreement with Mr. Smith and Bugout Gear LLC to use these marks. In 2010, Mr. Smith and Bugout Gear LLC sued Sandpiper for breach of that agreement. ECF No. 186-1 at 5; *see Smith v. Sandpiper*, No. 10cv353, ECF No. 1 (E.D. Va. July 19, 2010). The parties settled the lawsuit in 2011 and entered into a Settlement Agreement and General Release and an Agreement for Transfer of Trademarks and Provision of Consulting Services ( collectively, the "2011 Settlement Agreement"). Subsequently, in

2014, Smith sued Sandpiper for breach of the 2011 Settlement Agreement.  ECF No. 186-1 at 6; *see Smith v. Sandpiper of California, Inc.*, No. 14cv418, ECF No. 1 (E.D. Va. June 6, 2014).  This second lawsuit was also resolved by settlement, when the parties entered into a second settlement agreement (the "2014 Settlement Agreement").

Advantus propounded requests for production, seeking documents related to the two lawsuits, including production of the 2011 and 2014 Settlement Agreements.  The parties were unable to come to agreement on this issue, and filed the instant motion.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 26 permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  Information need not be admissible to be discoverable.  *Id.*  Once the propounding party establishes that the request seeks relevant information, "[t]he party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections."  *Superior Commc'ns v. Earhugger, Inc.*, 257 F.R.D. 215, 217 (C.D. Cal. 2009); *see Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) (requiring defendants "to carry heavy burden of showing why discovery was denied").

"The 2015 amendments to Rule 26(b)(1) emphasize the need to impose 'reasonable limits on discovery through increased reliance on the common-sense concept of proportionality.'"  *Roberts v. Clark Cty. Sch. Dist.*, 312 F.R.D. 594, 603 (D. Nev. 2016) (internal citation omitted).  The fundamental principle of amended Rule 26(b)(1) is "that lawyers must size and shape their discovery requests to the requisites of a case."  *Id.*  Both discovery and Rule 26 are intended to provide parties with "efficient access to what is needed to prove a claim or defense, but eliminate unnecessary or wasteful discovery."

*Id.*

The Court has broad discretion in determining relevancy for discovery purposes. *Surfvivor Media Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005); *see U.S. Fidelity and Guar. Co. v. Lee Investments L.L.C.*, 641 F.3d 1126, 1136 (9th Cir. 2011) ("District courts have wide latitude in controlling discovery, and [their] rulings will not be overturned in the absence of a clear abuse of discretion.") (internal quotation and citations omitted). To the extent that the discovery sought is "unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive," the court is directed to limit the scope of the request. Fed. R. Civ. P. 26(b)(2). Limits should also be imposed where the burden or expense outweighs the likely benefits. *Id.* How and when to so limit discovery, or to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," remains in the court's discretion. Fed. R. Civ. P. 26(c)(1).

### III.   DISCUSSION

Advantus propounded the following requests for production:

**REQUEST FOR PRODUCTION NO. 5**: All Documents relating to the Bugout Gear 2010 Lawsuit, to include, without limitation, all pleadings, orders, judgments and/or settlement agreements.

**REQUEST FOR PRODUCTION NO. 6**: All Documents relating to the Bugout Gear 2014 Lawsuit, to include, without limitation, all pleadings, orders, judgments and/or settlement agreement.

ECF No. 186-1 at 1, 3.

Responsive to these two requests, Innovapro produced redacted copies of the 2011 Settlement Agreement and 2014 Settlement Agreement. ECF Nos. 186-2, 186-3. The 2011 Settlement Agreement was produced with the following sections redacted: (1) section titled "Article 2 Consulting Services;" and (2) under "Article 3 Compensation," compensation to Mr. Smith. ECF No. 186-2 at 6-8. The 2014 Settlement Agreement was produced with the following sections redacted: (1) "Payments to Smith for Consulting Services;" (2) "Security for Monthly Payments;" (3) "Exhibit A, Product Sales Above

$10 Million in 2011, 2012, 2013, 2014, and 2015;" (4) "Consulting Services;" (5) "Consulting Agreement Superseded;" and (6) Confessed Judgement Promissory Note. ECF No. 186-3 at 3-6, 13-15. Advantus seeks to have the full, unredacted versions of these two agreements produced.

Advantus advances several reasons for why the unredacted versions of the settlement agreements are relevant to the instant action. First, Advantus argues that courts often find settlement agreements involving intellectual property rights relevant to latter infringement actions, because they relate to at least the issue of damages. ECF No. 186-1 at 6-7. Advantus cites cases where courts have ordered information regarding how much was paid to settle the prior trademark claims to be unredacted as relevant to damages and full settlement agreements to be produced as relevant to determine ownership rights. *Id.* Advantus also argues that the redacted information relates to its affirmative defense of abandonment because the terms of the agreement could show whether Sandpiper had a motive to stop using these marks to lessen its payment obligation to Mr. Smith and also to show potential bias of Mr. Smith as a witness. *Id.* at 9-10. Finally, Advantus also argues that the agreements are relevant to the claim of voidable transfer it asserted against Innovapro relating to the transfer of the assets, including the trademarks, for insufficient consideration and also to successor liability. *Id.* at 10-11. Innovapro strongly refutes each of these arguments.

Of the various arguments that Advantus puts forth, the Court is most persuaded that the full settlement agreements may be relevant to trademark claims, particularly as to damages. The crux of the disagreement of the parties on this issue is whether the redacted portions are related to the subject trademarks. Advantus claims that the redacted portions relate to the consulting services and compensation agreement between Mr. Smith and Sandpiper, and that this information is related to the trademarks because the consulting fees bear on the total compensation that Sandpiper paid for the trademark rights that Innovapro now accuses Advantus of infringing. ECF No. 186-1 at 8-9. Advantus refutes this argument, stating that the consulting agreement is a separate

agreement for services rendered by Mr. Smith, apart from the transfer of the trademark rights, and the 2011 Settlement Agreement in fact already contains a provision where Sandpiper agreed to pay $100,000 for the interest in the subject trademarks. *Id.* at 11-12. Advantus acknowledges that the 2011 Settlement Agreement does include the $100,000 payment, but points to evidence suggesting that this was not the full amount. Advantus cites to deposition testimony given by Innovapro's counsel when the purchase took place, who testified that Sandpiper may have paid 2 million for the trademark rights and that it might have come from a settlement agreement. *Id.* at 14. Thus, Advantus argues that this testimony shows that Innovapro and its counsel considered the trademarks to be worth more than $100,000.

Considering the arguments of the parties, the Court finds that the full settlement agreements, including the consulting sections, meet the relevance threshold under Rule 26. Advantus has put forth some evidence suggesting that the full amount Mr. Smith and Bugout Gear LLC received for the trademarks is not simply the $100,000. Advantus may or may not be able to eventually show that the consulting salary was considered by the parties to constitute payment for the trademarks, but that is not required to meet relevance. The evidence must only be reasonably calculated to lead to discovery of admissible evidence.

Furthermore, the comparative burden here is small—the settlement agreements have already been produced in their redacted forms. And, as Advantus points out, a protective order is already in place that can serve to protect any confidentiality and competitive harms that Innovapro has regarding the production of the settlement agreements, including an Attorney's Eyes Only designation. Innovapro does not specifically articulate any harms that it would suffer with disclosure with this higher level of protection.

Having found the settlement agreements at least relevant to the trademark claims, the Court **GRANTS** the motion and orders Innovapro to produce both the 2011 Settlement Agreement and 2014 Settlement Agreement as attached to the joint motion, in

their entirety without any redactions.  The Court will order that the agreements only be produced in their entirety with the Attorney's Eyes Only designation.

### IV.   CONCLUSION

After due consideration and for the reasons stated above, Advantus's motion to compel production of the unredacted copies of the 2011 Settlement Agreement and 2014 Settlement Agreement is **GRANTED**.  Innovapro shall produce these agreements to Advantus **within 7 days of this order**, under the Attorney's Eyes Only designation.

**IT IS SO ORDERED.**

Dated:  February 10, 2021

Hon. Nita L. Stormes
United States Magistrate Judge